UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
UNITED STATES OF AMERICA

vs.                              5:15-CR-342

RALPH DANIEL SMITH
a/k/a Dan Smithson,
                         Defendant.
-------------------------------------------x

*Sentencing* – August 2, 2016

James Hanley Federal Building, Syracuse, New York

HONORABLE BRENDA K. SANNES

United States District Judge, Presiding


A P P E A R A N C E S

For Government:        OFFICE OF THE UNITED STATES ATTORNEY
                       P.O. Box 7198
                       100 South Clinton Street
                       Syracuse, New York  13261-7198
                         BY:  LISA FLETCHER,
                              Assistant U.S. Attorney

For Defendant:         MERCHANT LAW GROUP, LLP
                       Attorneys at Law
                       535 Fifth Avenue
                       New York, New York 10017
                         BY:  DANIEL DeMARIA, ESQ.

                       NICHOLAS A. PASSALACQUA
                       Attorney at Law
                       587 Main Street
                       New York Mills, New York 13417


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*

1          THE CLERK:  Case is United States versus Ralph

2    Daniel Smith, 15-cr-342.  Counsel, please note your

3    appearance for the record.

4          MS. FLETCHER:  Lisa Fletcher for the United States.

5          MR. DEMARIA:  Daniel DeMaria and Nick Passalacqua

6    for Mr. Smith.  Good afternoon.

7          THE COURT:  Good afternoon.  We're here today for

8    the sentencing of Ralph Daniel Smith.  Let me start with what

9    I've received and make sure the parties have everything and

10   that I have everything that you've submitted.

11          I have the Presentence Report dated May 31st, 2016,

12   which is revised July 12, 2016, with an addendum to the

13   report dated June 29, and a second addendum to the report

14   dated July 12th, and Appendix A that contains the

15   psychosexual evaluation of the defendant by Jacob Hadden.  Do

16   all counsel have that?

17          MS. FLETCHER:  Yes, Your Honor.

18          MR. DEMARIA:  Yes, Your Honor.

19          THE COURT:  I understand the probation office has

20   given both counsel the twelve recommended special conditions

21   of supervised release?

22          MS. FLETCHER:  Yes.

23          MR. DEMARIA:  I don't recall having received that,

24   Your Honor.

25          THE COURT:  I believe the probation officer is in

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*    3

1    the courtroom, so she can provide you with a copy of the

2    twelve recommended special conditions of supervised release.

3            MR. DEMARIA:  Thank you.

4            THE COURT:  And I received the defendant's

5    sentencing memorandum and the letters submitted on behalf of

6    the defendant in connection with sentencing, and then letters

7    from the defendant dated July 8, July 25th and then

8    July 31st, which letter contained the attached decision in

9    the *United States versus D.W.*  And I've received the

10   government's sentencing memorandum and the government's

11   response to the defendant's sentencing memorandum.

12           Is there anything else regarding this matter?

13           MS. FLETCHER:  Not from the government, Your Honor.

14           MR. DEMARIA:  No, Your Honor.

15           THE COURT:  Let me just say I reviewed each of

16   those items carefully.

17           And I'll start just by checking, Mr. DeMaria, have

18   you read and discussed the Presentence Report and all of the

19   addenda to the report, discussed them with your client?

20           MR. DEMARIA:  Yes, Your Honor.

21           THE COURT:  And have you reviewed the recommended

22   conditions of supervised release?

23           MR. DEMARIA:  I did not.  I just received those,

24   Your Honor.  I apologize; I don't know if they got lost in my

25   e-mail or what.  I will gladly do it either now or after

1  sentencing, whatever the Court prefers.

2          THE COURT:  Why don't I give you a few minutes to

3  review the recommended conditions of supervised release with

4  your client.

5          MR. DEMARIA:  Thank you, Your Honor.

6          (Short recess.)

7          MR. DEMARIA:  Thank you, Your Honor.  I've gone

8  through them with Mr. Smith.

9          THE COURT:  Thank you.  And you also have gone over

10 the entire Presentence Report and the addendum with

11 Mr. Smith?

12         MR. DEMARIA:  I have, many times, Your Honor.

13         THE COURT:  Thank you.  Ms. Fletcher, have you read

14 the report and the addendum to the report?

15         MS. FLETCHER:  Yes.

16         THE COURT:  Mr. DeMaria, are there any objections

17 to the facts in the Presentence Report by the defendant

18 beyond your objection to paragraph 65 in the Presentence

19 Report?

20         MR. DEMARIA:  Your Honor, I believe my objections

21 with respect to paragraph 89 not -- you're speaking about

22 facts.  I'm sorry, Your Honor.  Right, 65 is the only one

23 pertaining to the facts.

24         THE COURT:  And my understanding is you have

25 objected, that you say that Mr. Smith only said once that he

*USA v. Ralph Daniel Smith — Sentencing — 8/2/2016*          5

1  wished his daughter hadn't been so open with him and in

2  hindsight talked about things that were not appropriate, he

3  didn't say that repeatedly.

4           MR. DEMARIA:  Based on my recollection that is

5  correct.  I agree with probation when she says it probably

6  does not matter, you know, if I misheard or whatnot.  I don't

7  think it will affect sentencing.

8           THE COURT:  I agree.  And I find that a ruling on

9  this dispute is not necessary under Federal Rule of Criminal

10  Procedure 32(i)(3)(B), as the matter will not affect

11  sentencing.

12           Are there any other objections to the facts in the

13  Presentence Report by the defendant?

14           MR. DEMARIA:  No, Your Honor.

15           THE COURT:  And does the government have any

16  objection to the facts in the Presentence Report?

17           MS. FLETCHER:  No objection.

18           THE COURT:  I adopt the facts, the factual findings

19  in the Presentence Report.  And now I will address the

20  guidelines calculation in the Presentence Report.

21           Does the government have any objection to the

22  guidelines calculation?

23           MS. FLETCHER:  We do not.

24           THE COURT:  And Mr. DeMaria, I understand that you

25  have.  You're objecting to the five level increase in the

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                6

1    offense level and seeking a downward departure from the

2    criminal history category of II, and also arguing that the 15

3    year mandatory minimum sentence violates the

4    Eighth Amendment, and asking that the sentence be imposed to

5    run concurrently.

6              MR. DEMARIA:  That's correct, Your Honor.

7              THE COURT:  Are there any other objections you have

8    to the guidelines calculation?

9              MR. DEMARIA:  No.

10             THE COURT:  And do either counsel want to

11   address -- or, do counsel agree with the probation office's

12   second addendum which concludes that under the Principles of

13   Sovereignty it's the state court that decides whether to give

14   the defendant credit for time served in federal custody.

15   This Court can't order it, the sentence to be concurrent or

16   consecutive to the state sentence.

17             MR. DEMARIA:  I disagree with that, Your Honor.  I

18   believe this Court has the power to run the sentence

19   concurrent with the state sentence.

20             THE COURT:  And have you read the case that was

21   cited by the probation office, the Supreme Court case in

22   *Setser versus United States*?

23             MR. DEMARIA:  I have, Your Honor.

24             THE COURT:  Where the Court says that if a

25   defendant serves his federal sentence first, the state will

*USA v. Ralph Daniel Smith – Sentencing – 8/2/2016*                    7

1    decide whether to give him credit against the state sentence

2    without being bound by what the District Court or the Bureau

3    of Prisons says on the matter.  Which is the scenario we have

4    here where the defendant is in primary federal custody and

5    will serve his federal sentence first.

6              MR. DEMARIA:  Your Honor, there is other Supreme

7    Court authority that says that the Court can run a federal

8    sentence concurrent to a not yet imposed state sentence,

9    which I realize is not the exact situation we have here.  And

10   based on the decision that probation cited, Your Honor's

11   probably correct, but we want to maintain our objection in

12   any event should the law change in the future.

13             THE COURT:  Thank you, Mr. DeMaria.  I should note

14   for the record that I agree with the probation office's

15   second addendum, that in this case it's the state court that

16   decides whether to give the defendant credit for his time

17   served in federal custody, and I adopt the findings and the

18   legal conclusions of the probation office's second addendum.

19             I should note for the record that I would not have

20   any objection to concurrent time if the state court decided

21   to impose or change the sentence to reflect that the time

22   should be served concurrently.  I think that would be

23   appropriate here because the offense level in this case has

24   been increased by five levels based upon the defendant's

25   sexual abuse.  But that's a determination I believe for the

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                    8

1  state court to make.

2         Do either counsel wish argument on the other

3  objections that the defendant has made to the guidelines

4  calculation?

5         MS. FLETCHER:  I'll rely on my papers in that

6  regard.

7         MR. DEMARIA:  I as well, Your Honor.

8         THE COURT:  With respect to the defendant's

9  objection to the five level increase in the base offense

10 level under 4B1.5(b)(1) for engaging in a pattern of activity

11 involving prohibited sexual conduct, I agree with and adopt

12 the addendum to the Presentence Report.  The defendant's

13 sexual abuse of the victim in this case constitutes a pattern

14 of activity involving prohibited sexual conduct, so I agree

15 with that five level increase.

16        With respect to the defendant's request for a

17 criminal history downward departure from a criminal history

18 category II to a category I, I agree with the probation

19 office's second addendum which notes that a downward

20 departure under 4A1.3(b)(1) is prohibited for a repeat and

21 dangerous sex offender against minors within the meaning of

22 4B1.5, and that guideline provision is 4A1.3(b)(2)(B).  I,

23 therefore, decline that request.

24        I note that a downward departure based on the

25 criminal history category would not change the guideline

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                    9

1   range in this case, which would be life, regardless of

2   whether the criminal history category is I or II, and that

3   the Court would impose the same sentence in this case whether

4   the defendant's in a criminal history category I or a

5   category II.

6          I reject the defendant's Eighth Amendment challenge

7   to the 15 year mandatory minimum sentence for production of

8   child pornography.  The Second Circuit has rejected

9   Eighth Amendment challenges to the constitutionality of

10  mandatory minimum sentences in child pornography cases.  And

11  I cite *United States versus Ramos*, 685 F.3d 120 at 124, note

12  11, where the Court rejected an Eighth Amendment challenge to

13  a mandatory 15 year sentence.

14         I do not find in this case that the 15 year

15  sentence is grossly disproportionate to the defendant's

16  conduct, and I will discuss my assessment of the aggravated

17  factors in this case and the seriousness of the conduct

18  shortly.

19         I, therefore, adopt the guidelines calculation in

20  the Presentence Report, the total offense level is 43, the

21  criminal history category is II, and the guideline range is

22  2,880 months, or 240 years.

23         At this point I'll give the parties and the

24  individuals who are here to speak an opportunity to speak.

25  And would the government counsel like to begin?

*USA v. Ralph Daniel Smith – Sentencing – 8/2/2016*          10

1          MS. FLETCHER:  Yes, Your Honor.  First I would call

2    S████ M██████, the victim's mother, who would like to

3    address the Court.

4          S████ M██████:  I'm not very good at public

5    speaking and this whole thing has been really bad.

6          THE COURT:  Ms. M██████, if you could just move

7    the microphone closer to you, then we can hear you.  Thank

8    you.

9          S████ M██████:  You're welcome.  I'm sorry for

10   what my daughter went through.  I didn't know this was

11   happening.  I trusted him with her and I didn't know he was

12   doing these things to her.

13          When she first told, everyone was calling her a

14   liar.  I understand that's not something that people want to

15   believe that somebody could do to any child, especially their

16   own, including me in the beginning, I'll admit to that.  I

17   didn't call her a liar but the rest did.  And I finally got

18   to a point where I had to give it to God and say, if this was

19   true, you need to do what needs to be done for what he has

20   done to her.

21          And that's when all the evidence started coming at

22   him, started finding all the evidence against him.  He

23   dropped the insurance as soon as –– her medical insurance as

24   soon as I got custody back of her.  The courts made me pay

25   him $60 in child support for her when I had custody, which I

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                11

1    would have rather had cut my own hands off rather than write

2    that check out to him after everything that he had done to

3    her.

4           I'm trying to deal with this the best that I can.

5    The anxiety is horrible.  It's bad.  It's almost caused me my

6    job.  I was put on probation.  We had to move to a bigger

7    place than I was living in when I got custody back of her.

8    It was a small one-bedroom apartment.  We moved to Rome, a

9    bigger place.  That's where she wants to reside.

10          I trusted him with her.  I just, I don't understand

11   how he could do this to her.  This is just beyond -- I don't

12   know.  I don't understand it, I really don't.  I don't know.

13   I don't understand how you do this to your own child.  I

14   don't know.

15          So, whatever he gets he deserves.  I'm trying to

16   give her as normal a life as possible now and I want to see

17   her grow up and be happy.  That's all I wish.  I'm trying the

18   best that I can.  Thank you.

19          THE COURT:  Thank you, Ms. M██████.

20          MS. FLETCHER:  Next, Your Honor, K████ S████ would

21   like to speak.

22          K████ S████:  My name is K████ S████.  I am

23   B████'s sister and biological daughter of Ralph Smith.  I'm

24   standing here today with a letter I wrote to address the

25   situation as it stands.  Out of every essay I ever had to

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                    12

1   write of any homework assignment I thought was so difficult

2   or a poem that I wrote that I thought was so deep, nothing in

3   the world compares to writing this.

4        And if you would have asked me years ago who my father

5   was or what kind of man he was, I would have told you that he

6   was an amazing, caring man.  He had the biggest heart in the

7   world and would do anything for anyone.  My father was strict

8   on me growing up.  He always told me he wanted better for me,

9   that he didn't want me to make the same mistakes he did in

10  life.  He wanted me to be successful so I didn't struggle

11  like he had.  I sometimes wonder if he had -- I wonder if he

12  realizes that I'm struggling with life more now than ever

13  before because of him and his actions.

14       For those of you who may not know, my father and I have

15  always been close.  I was one of three children and the

16  oldest and we did everything together.  I can't do anything

17  in life that he hasn't taught me.  And when people ask where

18  I learned the skills I have, it used to put a smile on my

19  face to say your name.  Now my stomach just sinks and tears

20  come to my eyes.  I was asked the other day by someone who

21  knew you if I was Ralphie's daughter.  She quickly followed

22  with an apology.  I can't even go out in public without fear

23  of someone stopping me and trying to talk to me about what's

24  going on.

25       Every time your name is mentioned, I break down and cry.

1    You took everything from us.  That day you called me and

2    asked me to pick B███████ up and talk some sense into her, you

3    gave me a choice; you told me either I believe her or I

4    believe you.  I screamed in my little sister's face that day

5    and called her things that I would never repeat, all because

6    I couldn't believe you would ever do such a thing.  I wish I

7    knew then what I know now because I would have called the

8    cops the day you showed up at my house unexpected to go

9    hunting after the restraining order was in place asking to

10   talk to B███████.

11        I spent the next year working and trying to mentally

12   deal with everything that was happening, trying my hardest to

13   support a family of seven, including B███████ and I, trying not

14   to get fired for all the time I was having to take off to

15   bring her places regarding the investigation.  Which by the

16   way, didn't work.  I got fired from my job after three years

17   because of time and attendance.

18        I don't think people truly understand how difficult it

19   was to hear B███████ call my father out without touching her

20   over the phone.  My father's response being, if you tell them

21   you were lying and come home, things will change.  He just

22   kept saying things will change over and over and over again,

23   no matter what B███████ had to say.  It's something that will

24   haunt me for the rest of my life.  From that point forward I

25   knew B███████ had been telling the truth.  Evidence just

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*          14

1   continued to pile on as he dragged this out for what seemed

2   to be an eternity.  We found out what he really did.  When my

3   father and Jackie turned all of our so-called family against

4   us, when my sister needed someone the most, everyone stepped

5   back and said she was lying.  And if you look around this

6   courtroom today, you will see the same ignorant family

7   members continue to stand by his side and enable him even

8   after he has pled guilty.  And that's okay.  Because we are

9   better off without people like them in our lives.  But what's

10  not okay is after all of this, the only thing we seek from my

11  father are two simply words, an I'm sorry, but we can't even

12  get that.  Instead we get I guess an apology.

13      Every single day of my life is a struggle.  I can't even

14  begin to imagine the pain my sister must feel.  If you were

15  to ask me today who my father is or what kind of man he is, I

16  would tell you that he is no man at all, never mind a father.

17  I would tell you what he has done to me and for what he has

18  done.  I would tell you that even running as far across the

19  country as I can get from him, I still have a life that is

20  impossible because of his actions.  I would tell you that I

21  hope he rots for what he has done to my sister.

22          THE COURT:  Thank you, Ms. S███.

23          MS. FLETCHER:  Your Honor, B████ M██████ would

24  like to talk.

25          B████ M██████:  I have a letter that I wrote to

*USA v. Ralph Daniel Smith – Sentencing – 8/2/2016*

1   him last year.  Basically in the note I had apologized for,

2   you know, in the beginning lying before any of this happened.

3   When he asked me if I wouldn't tell anyone, I said that I

4   wouldn't, and I ended up obviously getting ahold of

5   authorities.  I'm no longer sorry.  He made me think that I

6   had killed someone.  I went through a year of therapy to

7   help, but, I mean, it's still there, it still hurts and he

8   doesn't care.  I don't really think this is even affecting

9   him at all.  He just is trying to make people sorry for him.

10           I had to move in with my sister, and on top of her

11   having her own family problems, take care of me, bring me to

12   places, you know.  I was in cheerleading and she still helped

13   me with that.  But the point is that she's still so young.

14   She didn't need to take on her sister who, you know, was

15   saying all this stuff about her father.  But, I mean, how

16   it's affected me today is I still have really bad anxiety

17   and, you know, like missing my family members.  My little

18   brother, like, just because of this I won't be able to grow

19   up and watch him grow up.

20           And, I mean, I'm not even comfortable around older

21   men any more.  I have a job where I'm constantly around

22   people and sometimes I can't even take an order because just

23   seeing them being around his age or even if I find someone

24   that looks like him, I just, I get really uncomfortable.  And

25   for the years after, I mean, it's almost been two years, and

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*          16

1   I still have depression and anxiety because he had pretended

2   to be Dan and, you know, it led to him sexually abusing me.

3            So I just want him to know that even though he

4   deserves everything he gets, he still will be thought of

5   because I can't, I can't get over how he did this.  So if he

6   gets 240 years, I'm okay with that.

7            THE COURT:  Thank you, Ms. M████████.  I know how

8   hard it is to get up here and do what you just did.

9   Ms. Fletcher.

10           MS. FLETCHER:  Your Honor, as I think you know, I

11  am rarely, if ever, at a loss for words when sentencing day

12  comes for defendants convicted of sexually exploiting

13  children.  These are the worst of crimes committed against

14  the most vulnerable victims.  But Ralph Smith has taken this

15  insidious crime to a new and disturbing level, one that

16  leaves me speechless.

17           The ruse he concocted, carefully planned and

18  carried out, shows an unparalleled depravity deserving of the

19  highest of sentences.  Imagine B█████ as a 14-year-old girl

20  taken from her mother, placed with her father, a man she had

21  spent little time with over her lifetime to that point.  She

22  was given a couch to sleep on.  She was trying to make the

23  best of a difficult situation.  She was trying to foster a

24  relationship with her father, the one parent in her life at

25  that time.

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*

1          She didn't have a boyfriend.  She didn't think she

2   was pretty.  She had all of the insecurities and self-esteem

3   issues of a girl of 14.  And her father preyed upon that.

4   Somewhere, somehow Ralph Smith hatched a plan to exploit his

5   daughter's insecurities for his own perverse amusement and

6   sexual gratification.  What Ralph Smith did to his daughter

7   over the course of this crime defies description.

8          He lured her into a relationship where she thought

9   a boy her age loved her.  She thought he thought she was

10  pretty.  He wanted to be with her.  She told him her hopes.

11  She told him her dreams.  She confided in him about her life

12  and her hope to build a relationship with her father.  The

13  defendant preyed upon these emotions.  Not once during this

14  crime did he say this is over the top, I've got to stop,

15  she's saying things here that make me realize this is too

16  much.  No.

17          Instead he groomed her, first through chat, then

18  through increasing pressure to send sexually explicit images

19  to him and then to blackmail and extortion.  He asked for

20  nude pictures.  She said no.  He sent penis pictures to his

21  daughter.  She said she didn't want them, she didn't ask for

22  them, she didn't like that kind of thing.  But he begged her

23  for nudes, and she said no again and again.  And then she

24  attempted to end the relationship.

25          But not to be dissuaded, the defendant extorted

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                    18

1   from his own daughter the images he really wanted, the images

2   he had been asking for all along, close-ups of her vagina.

3   Something that goes against everything it means to be a

4   parent.  And he used those images again and again to harass

5   her.  He allowed her to believe she played the part in the

6   suicide of a teen-age boy.  And thereafter and for almost a

7   year he sexually abused her.

8           And Ralph Smith still doesn't get it.  Ralph Smith

9   still attempts to rationalize and minimize his shocking

10  offenses.  He still wants to falsely deflect blame to his

11  daughter.  He says she wore provocative clothing.  No, she

12  didn't.  He says she confided inappropriate things to him.

13  What is it to be a parent?  There is no such thing as

14  confiding inappropriate things.  Something that would

15  persuade him that then maybe it was okay to have sex with

16  her?  He says she misinterpreted his sexual advances.  Again,

17  no, she didn't.  And he has pled guilty to the crimes he

18  committed as a result of those sexual advances.

19          All along and continuing to this day there is one

20  solid truth; Ralph Smith is in it for Ralph Smith.  He will

21  do and say whatever it takes to get whatever it is he wants;

22  sex chat from his daughter, pictures of her vagina, leniency

23  from this Court.  His excuses are pathetic.  He has told so

24  many lies.  Even the reporting to his own psychologist was

25  reduced to blurred recollections.  But there is nothing

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*      19

1    blurry about the evidence in this case.  His own words

2    through the texts we can all relive this crime in all of its

3    insidious detail.  Every single word of this crime was

4    captured and we have it.  We can watch the grooming.  We can

5    watch the harassment.  We can watch every word that Ralph

6    Smith wrote to his daughter.  His crime was clear and it was

7    purposeful and it was sheer evil.

8              In this the defendant has no peer.  There is no

9    comparable case to what Ralph Smith has done here.  He has

10   rewritten the book.  He has found a new and shocking way to

11   abuse a child, and it's his own child.  In doing this he has

12   earned every day, every week and every year of his guideline

13   sentence.  There is no rational or reasonable alternative.

14   Especially for a man who continues to deflect blame and

15   rationalize his crimes.

16             While I expect he will feign remorse in his remarks

17   to the Court in hopes of leniency, don't lose sight of who

18   Ralph Smith really is; a father who would prey on the

19   emotions of a child, exploit vagina pictures from his

20   daughter and later send them back to her with this message,

21   "I know you wanted me to leave you alone but I wanted to let

22   you know I look at this pic every day and I get off on it."

23   That's who Ralph Smith is.  Those are the crimes that he

24   committed and the sentence that he has earned.  Thank you.

25             THE COURT:  Mr. DeMaria.

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*    20

1          MR. DEMARIA:  Your Honor, before I start, Mr. Smith

2     is going to be making lengthy remarks.  Perhaps the marshals

3     would be amenable to removing his handcuffs at this time so

4     that when he speaks he is a bit more --

5          THE COURT:  Is there any objection to removing the

6     handcuffs?

7          THE MARSHAL:  Our policy, Your Honor, is not to

8     remove them, we prefer they stay on.

9          THE COURT:  If you could remove one of the

10    handcuffs so that he can move one hand.

11         MR. DEMARIA:  Thank you, Your Honor.  And I'll just

12    wait until they're done before I commence, if that's

13    acceptable.

14         THE COURT:  Yes.

15         MR. DEMARIA:  Your Honor, this is obviously a very

16    serious crime and Mr. Smith is the very first to admit that

17    he is deserving of very serious punishment.  He needs

18    treatment.  He wants treatment.  He makes no excuses for what

19    he has done.  He clearly, clearly needs treatment.  He is

20    very remorseful.  He understands what he did is wrong.  He

21    takes full responsibility.  He is very sorry.  The Court will

22    hear it from him in just a moment.  He wants treatment.  He

23    needs treatment.

24         I ask the Court be guided by the fact that Congress

25    said the 15 year minimum and the thirty year maximum on the

1   most serious charges, Congress could have easily mandated

2   life in prison as the maximum.  They did not.  They set a

3   maximum 30 years.

4           In fact, Mr. Smith was only initially charged with

5   one single count, which carried between 15 and 30 years.  The

6   government brought a whole bunch of counts to dissuade him

7   from going to trial.  But I believe the starting point for

8   the Court should be 15 to 30 years and no more simply because

9   that is the maximum on the individual charges.

10          No one can dispute the fact that 15 years is a

11  very, very serious, very significant punishment for a first

12  time offender, no matter how serious the conduct.  People

13  kill people, they get less time.  In state court Mr. Smith

14  was only facing seven years for very egregious conduct.  The

15  judge gave him six years.

16          In prison, Your Honor, Mr. Smith is going to have a

17  very, very difficult time.  Right now he is in protective

18  custody because if he was in general population, he would

19  probably be killed or seriously injured by any number of

20  inmates.  His entire sentence only to look over his shoulder.

21  He is going to be in big, big trouble.  I won't be surprised

22  if he needs to spend 23 hours a day in a jail cell.

23          And the Court should take into account the fact

24  that 15 years for him may be much, much different than 15

25  years for someone who robbed a bank or dealt drugs or who did

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                    22

1    any number of other very, very serious crimes.

2           And in Judge Weinstein's recent decision, which I

3    gave to the Court, he alluded to the fact that the quality of

4    incarceration, for lack of a better term, should be taken

5    into consideration.  And here we have an individual who

6    committed such a terrible crime that he will have a bullseye

7    on him by the other inmates, and so each day he spends in

8    jail will be a nightmare for him.

9           Your Honor, there is only one direct victim in this

10   case, fortunately.  I realize that the sister, the mother and

11   probably many of her friends and other family members were

12   severely affected, but I would submit the fact there is only

13   one direct victim is a mitigating factor, not to mention the

14   fact that it also goes to likelihood of reoffending and

15   protecting the public.  I would be very surprised if the FBI

16   did not knock on doors and speak to his neighbors.  And

17   clearly from the fact that he was not charged with any other

18   crimes, I believe the Court can take solace in the fact that

19   this was one incident, an awful, awful incident, but it was

20   likely based on investigations the only crime he has

21   committed.

22          Fifteen years is more than enough to punish him.

23   It's more than enough to deter others, especially if the

24   Court is going to run it concurrent, as the Court held it was

25   bound to, to the state sentence.  So 15 plus six, that would

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                23

1    put him at 21 years.  The doctor having found Mr. Smith to be

2    a very, very low risk of reoffending.  And the Court should

3    keep in mind that in 15 years to 21 years he will be a much,

4    much different person than he is now having gone through

5    extensive treatment.

6            And I submitted a letter to the Court, the

7    July 25th letter, advising the Court that all Ms. Fletcher

8    needs to do at the time of his release is simply move for

9    civil commitment and he will immediately be detained until

10    psychologists examine him.  And I haven't found, I did quite

11    a bit of work trying to find cases where a lawyer has argued

12    that.  I couldn't find any.  I think it's a pretty novel

13    approach.  But I believe it makes a lot more sense to wait

14    and see how he progresses through treatment, and that's

15    always an option to protect the public.  So the Court should

16    focus on punishment and deterrence.  And again 15 years is

17    more than enough.

18            And lastly, Your Honor, the Court can, of course,

19    impose lifetime supervised release.  And there is an

20    extensive list of special conditions and sex offender

21    registration.  And so we ask the Court to sentence Mr. Smith

22    to 15 years, not just out of sympathy, but it really is a

23    very appropriate sentence in this case.

24            THE COURT:  Mr. DeMaria, just to correct the

25    record, I did not find that I was bound to run the sentence

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*          24

1    concurrent with the state sentence.  I found that the state

2    court has to decide whether the sentence would be concurrent

3    or consecutive.

4              MR. DEMARIA:  I stand corrected, Your Honor.  Thank

5    you.

6              THE COURT:  Mr. Smith, you have a right to speak.

7              MR. DEMARIA:  Would the Court like Mr. Smith to

8    stand or may he remain seated?

9              THE COURT:  He may remain seated.

10             THE DEFENDANT:  Your Honor, I would like to offer

11   these remarks in hopes that it gives the Court some insight.

12   I would like to start by telling everyone how ashamed I am of

13   my actions.  But even more important, how I feel about what

14   this has done to my daughter.  There are no words that can

15   describe how ashamed and remorseful I feel.  I wish there was

16   a way for me to take away any of the pain from my daughter,

17   but there is not.  All I can do is ask for forgiveness and no

18   way am I trying to blame anyone but myself.  I'm the adult

19   and I take full responsibility for my actions.

20             I don't remember a lot about the things that

21   happened.  I found out recently with my interview with the

22   psychologist that this is common.  He also stated that after

23   treatment these memories should come back.  By no means am I

24   making excuses for what I did.  What I did was wrong and I'm

25   very sorry.

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*

1          Since my guilty plea it has been torture.  The jail

2    placed me in a box for my protection they said.  It had and

3    continues to have a very negative effect on me mentally and

4    physically.  I'm locked in my cell 23 hours a day.  On top of

5    this my wife, who I have been with for over 14 years,

6    informed me that she still supports me but she can't wait for

7    me knowing that a minimum sentence if ran all concurrent is

8    15 years.  I'm hoping and praying that me and my wife can

9    rebuild our marriage after my release.  If not, I will turn

10   all my focus to my remaining family.

11          I have made an awful mistake.  I will have to live

12   with knowing I hurt my daughter for the rest of my life.  I

13   can assure you and everyone else I will never do anything

14   like this ever again.  There are no words that can describe

15   how horrible I feel.  I would like to apologize to my

16   daughter and my family and to the Court.  But I hope and pray

17   I have the opportunity to show and to prove everyone that

18   I've learned from this.  I look forward to showing everyone

19   that I will be a law-abiding citizen after my release from

20   prison.  Again, I would like to apologize to my daughter, to

21   my family and to the Court.  I'm truly sorry.

22          THE COURT:  Thank you, Mr. Smith.

23          Mr. DeMaria, with respect to your request that the

24   Court not defer consideration of the 3553(a) factor that

25   requires the Court to consider the need for the sentence

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                  26

1   imposed to protect the public from further crimes of the

2   defendant, I do decline to defer consideration of this

3   factor.  I know you argue that there may be an evaluation of

4   him at the time of civil commitment, but the danger -- the

5   need to protect the public from further crimes of the

6   defendant is a statutory factor that I must consider and I

7   have not seen any case law that would support deferring

8   consideration of this.  And the Court has to consider there

9   are many people like the defendant who would not even be

10  considered for civil commitment, so I don't know what's going

11  to happen at that stage of the case.  At this stage of the

12  case I have to follow the law, which requires that I consider

13  the need to protect the public from further crimes of the

14  defendant.

15          In imposing the sentence I've carefully considered,

16  as I must, the factors set forth by Congress under 18 U.S.C.

17  3553(a).  And I'm going to talk a little bit about those

18  factors and my consideration of those factors.

19          In this case the nature and circumstances of the

20  offense present several aggravating factors.  As the record

21  establishes, Mr. Smith, you concocted an elaborate,

22  duplicitous and calculated scheme where you pretended to be a

23  15-year-old boy, pretended to have committed suicide, and

24  then pretended to be the boy's mother.  You sent graphically

25  sexually explicit chats to your 14-year-old daughter telling

*USA v. Ralph Daniel Smith – Sentencing – 8/2/2016*                    27

1    her what you would like to do with her, and you were really

2    cruelly indifferent to the emotional needs of a 14-year-old

3    girl who you coerced into taking sexually explicitly pictures

4    of herself after she repeatedly told you that she did not

5    want to take these kinds of pictures.  By my count looking

6    over the texts, she told you over ten times that she did not

7    want to take these pictures, and only agreed to do it after

8    you threatened her that you would reveal some of the sexually

9    explicit texts, and the underwear picture that you coerced

10   her to take, that you would reveal that to her father.

11            The texts reveal that she begged you to stop and

12   reported that she felt virtually raped by what you did.  And

13   for two years she thought she contributed to the suicide

14   death of a young boy.  Her statement this afternoon was truly

15   heartbreaking for the Court to watch.

16            I have to consider the aggravating fact that you

17   distributed the pictures you coerced her to take.  You didn't

18   distribute them on the internet but you distributed the

19   pictures to her in a way that was also cruel.  In

20   January 2014 sending her the underwear picture, February 2014

21   the sexually explicit picture.  I understand she never got

22   that picture, but your note to her was, "I look at this

23   picture every day and got off on it."  I have to consider

24   that as an aggravating factor.

25            I considered the mitigating factors in this case,

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                28

1  Mr. Smith, the mitigating factors that your attorney has

2  raised.  The fact that you had no criminal record before the

3  conduct that led to the abuse in this case, the dysfunction

4  in your family history and how you were raised.  I've

5  considered the letters from family and friends describing how

6  you helped your family and others who needed you.  And I've

7  carefully considered the thoughtful letter I received from

8  your stepfather, who is dealing with the pain of this

9  situation but who wants the Court to know that there are

10 people who love and support you while deploring your actions.

11         I've considered the psychosexual analysis by

12 Dr. Hadden.  As the government notes, any evaluation of that

13 report has to take into account the fact that Dr. Hadden only

14 considered excerpts of the chat and did not appear to

15 consider the fact that you continued to harass this

16 14-year-old daughter distributing images after the supposed

17 death of Dan Smithson and after you began sexually abusing

18 her.

19         I have to consider the fact that Dr. Hadden's

20 conclusions are based upon your reporting, and your report of

21 your conduct does not at all square with the facts of this

22 case.  But I do consider his conclusion that incest offenders

23 have lower levels of sexual recidivism than other sexual

24 offenders.

25         I've considered these mitigating factors, but at

1    the same time I have to consider Dr. Hadden's conclusion that

2    you have limited insight into your offense behavior.  Your

3    minimization of what you did when you were interviewed by

4    Dr. Hadden and your lack of insight into your criminal

5    conduct is very troubling.  And I also note that you told the

6    probation office you wish she hadn't been so open with you

7    talking about things not appropriate between a father and

8    daughter, which reflects your distorted thinking and lack of

9    understanding of the role of a parent and an adult in that

10   relationship.  Those are issues that you need to address in

11   treatment.

12           I've considered the need for the sentence imposed

13   to reflect the seriousness of this offense, to promote

14   respect for the law, and to provide a just punishment for the

15   offense, to afford adequate deterrence to criminal conduct,

16   to protect the public from further crimes of the defendant,

17   and to provide the defendant with needed educational and

18   vocational training, medical care or other correctional

19   treatment in the most effective manner.

20           I understand that I need to impose a sentence that

21   is sufficient, but not greater than necessary, to comply with

22   these purposes.  I've considered the sentencing guidelines

23   issued by the Sentencing Commission and the applicable

24   guidelines range in this case, as well as the applicable

25   policy statements issued by the Sentencing Commission, the

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*      30

1   need to avoid unwarranted sentence disparities among

2   similarly situated defendants, and the need to provide

3   restitution to the victims.  I've carefully considered the

4   case law cited by both counsel, and I've considered the

5   parties' arguments regarding the Eighth Amendment.  I do not

6   believe the sentence I'm about to impose is disproportionate

7   to the gravity of the offense in this case.

8         Do either counsel know any legal reason other than

9   those already argued why sentence should not be imposed?

10        MS. FLETCHER:  No, Your Honor.

11        MR. DEMARIA:  No, Your Honor.

12        THE COURT:  I've reviewed and considered all the

13  pertinent information, including the Presentence

14  Investigation Report, all of the addenda, submissions by

15  counsel, the 2015 edition of the Sentencing Guidelines

16  Manual, and the factors outlined 18 U.S.C. 3553(a).  I adopt

17  the factual information and the guidelines applications in

18  the Presentence Report.  And as I noted, the total offense

19  level is 43, the criminal history category is II, and the

20  guideline imprisonment range is 2,880 months, or 240 years.

21        While the nature and circumstances of this offense

22  are nothing short of cruel and disturbing, the Court is

23  mindful that the offenses of conviction did not involve any

24  actual touching, physical force or violence, while the

25  defendant's manipulation, grooming and sexualization of his

1  daughter under the guise of a teen-age boy who cared about

2  and even loved her is atrocious.

3        The Court must consider all the factors set forth

4  in 18 U.S.C. 3553(a) and fashion a sentence that's

5  sufficient, but not greater than necessary, to accomplish the

6  goals of sentencing.  The Court finds that a guideline

7  sentence of 240 years, which is essentially a life sentence,

8  is not warranted in this case.  The Court believes that the

9  sentence imposed will protect the public from further crimes

10 of the defendant, afford adequate deterrence, reflect the

11 seriousness of the offense, and provide just punishment.

12       Specifically, the facts and circumstances of this

13 case warrant a lengthy term of imprisonment after which the

14 defendant will be subject to a life term of supervised

15 release, thereby reducing the likelihood that he will commit

16 further crimes.

17       Moreover, the incestuous nature of his offense

18 further reduces his likelihood to reoffend compared to other

19 types of sexual offenders.  Furthermore, it's the Court's

20 understanding that among the many concerns of victims of

21 these types of offenses, one in particular is the fear that

22 images portraying their victimization and abuse have been

23 uploaded to the internet making them available for evermore,

24 thereby perpetuating their abuse.  Victims have also

25 expressed concern their images could potentially be used by

1   other offenders to groom and victimize other children.  It is

2   notable that neither of these factors are present in this

3   case.

4          Lastly, the Court has considered the six year state

5   term of imprisonment that was imposed for the actual sexual

6   abuse perpetrated by the defendant against the victim in this

7   case, and notes that the five level enhancement which

8   accounts for abuse results in a substantial increase in the

9   guideline range in this case.

10         For all of these reasons, along with the history

11  and characteristics of the defendant, including his lack of

12  any prior criminal history, and his dysfunctional family

13  history, the Court finds that a guideline sentence would be

14  greater than necessary to accomplish the goals of sentencing

15  and will therefore impose a non-guideline sentence.

16         Mr. Smith, upon your plea of guilty to Counts 1

17  through 12 of the superseding indictment, it's the judgment

18  of the Court that you are hereby committed to the custody of

19  the Bureau of Prisons for a period of 20 years; 240 months.

20  The term consists of 20 years on each of Counts 1 through 3,

21  Counts 4 through 8, and 12, and 10 years on each of Counts 9

22  through 11.  All such terms shall be served concurrently.

23         The Court recommends that you participate in sex

24  offender treatment and substance abuse treatment while in

25  custody.  Upon your release from imprisonment, you shall be

*USA v. Ralph Daniel Smith – Sentencing – 8/2/2016*                33

1    placed on supervised release for a term of life.  This term

2    consists of life on each of Counts 1 through 8, and 12, and a

3    term of three years on each of Counts 9 through 11.  All such

4    terms shall be served concurrently.

5           While on supervised release, you shall not commit

6    another federal, state or local crime, you shall comply with

7    the standard conditions that have been adopted by this Court,

8    as well as the special conditions that have been provided to

9    you and your attorney.  The Court adopts these conditions and

10   they will be made a part of the record.  The Court finds

11   these conditions are necessary and justified in this case

12   based upon the nature of the instant offense as well as the

13   history and characteristics of the defendant as outlined in

14   the Presentence Report.

15          The Court finds based on your financial resources,

16   projected earnings and other income, as well as your

17   financial obligations, that you do not have the ability to

18   pay a fine; therefore, no fine is imposed.  You shall pay to

19   the Clerk of the Court a special assessment of $100 on each

20   of Counts 1 through 12, for a total of $1,200, which is due

21   and payable immediately.

22          Both parties have the right to appeal this

23   sentence.  You are advised to consult with your attorney to

24   determine whether or not an appeal is warranted.  Any appeal

25   must be filed within 14 days of the judgment that's filed in

*USA v. Ralph Daniel Smith - Sentencing - 8/2/2016*                    34

1    this case.

2           Mr. Smith, I encourage you to take advantage of the

3    sex offender treatment programs and other programs in prison

4    to help you get some insight into your criminal conduct and

5    the damage that you've caused and help you fulfill your

6    stepfather's expectations of you.

7           You're remanded to the custody of the United States

8    Marshal Service in accordance with the terms of this

9    sentence.

10          Anything further?

11          MR. DEMARIA:  Yes, Your Honor, two things.  First,

12   may we have a recommendation that Mr. Smith be incarcerated

13   at Otisville?  It's my understanding that there are a lot of

14   sex offenders there and it may be a bit more safe for him.

15   Otherwise, as close to Herkimer County as possible so that he

16   is near his mom and his son.

17          THE COURT:  I can recommend that he be as close to

18   his family in Herkimer County as possible and recommend

19   Otisville.  I'm, frankly, not sure if that's the best place

20   for him.  The government might be able to speak to that.

21          MS. FLETCHER:  No idea.

22          MR. DEMARIA:  Thanks, Your Honor.  My second issue.

23   I spoke to Mr. Smith and we're going to discuss whether or

24   not he wants to appeal it, but my understanding is that he

25   does not have any money for the appeal filing fee.  I have an

*USA v. Ralph Daniel Smith – Sentencing – 8/2/2016*                    35

1    affidavit for Mr. Smith to appeal in forma pauperis.  I don't

2    know if the Court wants to consider that now or if I should

3    e-mail that to the courtroom deputy, or how the Court wants

4    to proceed, being mindful that we only have 14 days.

5              THE COURT:  You can provide it today to the

6    courtroom deputy.  Wait.  She informs me it should be filed

7    with the notice of appeal.

8              MR. DEMARIA:  Thank you, Your Honor.

9              THE COURT:  Anything further from either counsel?

10             MR. DEMARIA:  No, Your Honor.

11             THE CLERK:  Court's adjourned.

12                     *              *              *

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.


_____

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter